UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROGER KNUTSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1319-SEB-TAB |
| | ) | |
| UGS, SDRC (STRUCTURAL DYNAMICS | ) | |
| RESEARCH CORPORATION), | ) | |
|     Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Unigraphics Solutions, Inc. ("UGS") and Structural Dynamics Research Corporation's ("SDRC") ( collectively "Defendants") Motion for Summary Judgment [Docket No. 41] on Plaintiff Ralph Knutson's ("Knutson") breach of contract, unjust enrichment and Indiana Wage Statute claims, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. Knutson formerly worked as an Account Sales Executive for Defendants and asserts that he is owed, and has not been paid, $672,602.00 in commissions dating as far back as 2001. Knutson bases his claims on three computer software transactions:[1] (1) a purported 2001 sale of Metaphase/Teamcenter Enterprise software to General Motors; (2) the maintenance portion of a 2001 Delphi software order; and (3) sales of PLM CAE Software in the latter half of 2003. Defendants seek summary judgment on all of Knutson's claims for

---

[1] Originally, Knutson based his claims upon four transactions but Plaintiff appears to have dropped his allegations relating to the 2002 revenue split on a Magna, Intier order claim.

commissions, arguing that such claims are unfounded and fail as a matter of law.  In addition, Defendants assert that Knutson cannot recover on two of the three transactions for which he claims he is owed commissions because they are barred by the applicable statute of limitations.

As explained below, we hold that the claims for commissions for the purported 2001 sale of Metaphase/Teamcenter Enterprise software to General Motors and the maintenance portion of a 2001 Delphi order are indeed barred by the applicable two-year statute of limitation.  As for the third transaction, sales of PLM CAE Software in the latter half of 2003, that claim is not time-barred, but we nonetheless conclude that Knutson is not entitled to commissions on all sales of PLM CAE Software between July 1, 2003 and December 31, 2003.  Thus, we <u>GRANT</u> Defendants' Motion for Summary Judgment as to Knutson's claims of breach of contract, unjust enrichment and the violation of the Indiana Wage Statute.

## *Factual Background*

It is undisputed that, during and prior to 2001, UGS and SDRC were competitors in the development and sales of CAD/CAM and PDM software.  Kruse Decl. ¶ 3.  In May of 2001, Electronic Data Systems Corporation ("EDS") announced its planned acquisition and merger of UGS and SDRC.  Kruse Decl. ¶ 6.  By December 31, 2001, EDS acquired[2] and merged UGS and SDRC into a single entity called UGS.  Kruse Decl. ¶¶ 7-10.

---

[2] EDS sold UGS, which, by the time of the sale, included both the original UGS and SDRC companies.

2

In 2001, Knutson was employed as a sales employee of SDRC. Def. Ex. O from Docket No. 44. At the completion of the merger on December 31, 2001, Knutson chose to become a sales employee of UGS. Def. Ex. P from Docket No. 44. Knutson's pay both at UGS and SDRC consisted of a base salary plus certain commissions, as outlined in a compensation program. Def. Ex. I, G-L, O-P, S-T from Docket No. 44. Each year from 2001 to 2004 the new commission compensation program and plan superseded the prior year's version, except for the 2003 compensation program. Def. Ex. H, J, T, N at Docket No. 44. In July 2003, the "2003 PLM Solutions Sales Incentive Plan" was amended and superseded by the "2003 PLM Solutions Incentive Plan," which was in effect from July 1, 2003 to December 31, 2003. Def. Ex. K, L. Knutson received a monthly statement detailing the amount of his earned commissions. Def. Ex. C, F, O, P, S from Docket No. 44. During his time both at SDRC and UGS, Knutson created and maintained a list of commission grievances concurrently with the time they occurred. Knutson Depo. at 99: 1-25, Def. Ex C from Docket No. 44.

  *A.*  *The Transactions*

Knutson's claims for unpaid commissions, consisting of breach of contract, unjust enrichment and violation of the Indiana Wage Statute, are based on three transactions: (1) a purported 2001 sale of Metaphase/Teamcenter Enterprise software to General Motors, (2) the maintenance portion of a 2001 Delphi order, and (3) sales of PLM CAE software during the latter half of 2003. Knutson Depo. at 100-103 from Def. Ex. C.

  *1.*  *Sales of Metaphase/Teamcenter Software to GM*

The first transaction, the sale of Metaphase/Teamcenter Software to General Motors ("GM"), allegedly arose between June and August of 2001.  Def. Ex. F.  Knutson asserts that he had some responsibility for attempting to sell SRDC's Metaphase/Teamcenter Enterprise software to GM, including his issuance of a quote to GM for $6,980,000 in software in June of 2001 and his compilation of a list of software for GM worth $38 million dollars on approximately September 24, 2001.  Knutson Depo. at 66-71 from Def. Ex. C.  GM never accepted Knutsons' June 2001 price quote nor did it purchase any Metaphase/Teamcenter Enterprise licenses during or after 2001.  Def Ex. F Morton Depo at 7, 11-13; Knutson Depo at 72-73 from Def. Ex. C.

*2.     Sale of Maintenance Software to Delphi*

Knutson's second commission transaction, the sale of maintenance to Delphi, allegedly arose in August of 2001.  Knutson asserts that he should have received credit for a five-year maintenance plan worth $2,401,000 towards his commissions for the August 31, 2001, order of Metaphase/Teamcenter Enterprise software for Delphi.  Plaintiff's Brief in Opposition at 12-13; Def. Ex. F from Docket No. 44.  On June 28, 2001, Delphi issued a purchase order to EDS for approximately $212,000 in software maintenance for both its older product data management ("PDM") software known as "Sherpa" and initial maintenance on the Metaphase software.  Pendergast Depo. at 10:24-12:15, 20:10-30:10 from Def Ex. E.  On August 29, 2001, Delphi issued a purchase order to EDS for $3,150,000 for Metaphase/Teamcenter Enterprise software but did not include any initial maintenance.  Id. at 26:14-25, 28:24-29:4 from Def. Ex. E.  On August 31,

4

2001, EDS purchased the Metaphase/Teamcenter Enterprise software, which it planned to sell to Delphi, from SDRC for approximately $2,565,000 and $212,000 worth of initial maintenance.  Def. Ex. U at UGS000080-82 from Docket No. 44.  On approximately September 27, 2001, Delphi approved a Customer Service Agreement for the Metaphase/Teamcenter Enterprise software not including any maintenance.  Def. Ex. U at UGS000087, 89-91, 97-101.  In November and December of 2001, Knutson was credited with commissions on the $2,565,000 worth of Metaphase/Teamcenter Enterprise software and approximately $212,000 worth of initial maintenance.  Knutson Depo. at 20 from Def Ex. C.

In January and February 2002, Knutson informed Delphi that its warranty period was set to expire on February 15, 2002.  Def Ex. V at 122-127.  By the end of January 2002, Delphi approved and created a Customer Service Agreement to renew the maintenance on the Metaphase/Teamcenter Enterprise software from March 1, 2002 to August 32, 2006.  Pendergast Depo. at 31:6-15 from Def Ex. E.  Ultimately, Delphi did not agree to purchase any Metaphase/Teamcenter Enterprise maintenance, aside from the $212,000 worth of initial maintenance, until the end of February 2002.  Id. at 31:25-32:5.  The 2002 Compensation Program provided that "sales of other products or services not listed above [such as both software maintenance and hardware sales which were not on the list] are excluded from the terms of this Plan."  Def. Ex. J at 5 from Docket No. 44.

   *3.     Sale of PLM CAE Software*

The third alleged transaction upon which Knutson bases his third claim, the sale of

PLM CAE Software, arose between July and December 2003.  Knutson Depo. at 103:22-25 from Def. Ex. C.  The amended "2003 PLM Solutions Incentive Plan," which was in effect from July 1 to December 31, 2003, specified that Knutson would receive commissions on "50% of all NX Nastran Software and related PLM CAE Software sales into the Central and Eastern Americas Sales Regions." Def. Ex. L from Docket No. 44 (emphasis added).   Knutson asserts that, under the "2003 PLM Solutions Incentive Plan," he is entitled to a commission totaling $53,827 for the sale of PLM CAE Software in the latter half of 2003, but was paid only $11,426.  Knutson Depo. at 107-108 from Def. Ex. C.  Knutson maintains that the wording of the incentive plan merely draws attention to the NX Nastran product and does not require the sale of PLM CAE Software to be in conjunction with the sale of NX Nastran Software in order for him to qualify the commissions.  Knutson Depo. at 108.

Defendants dispute that Knutson's sales of PLM CAE Software were all related to NX Nastran Software and that he was paid only $11,426 of what he was owed in commissions for 2003.  Def. Mem. in Support at 19.  Defendants assert further that not all sales of PLM CAE Software in the second half of 2003 were related to the sale of NX Nastran Software and that Knutson was, in fact, properly payed $21,262.50 in commissions for 2003.  Def. Reply at 8-10; Def. Ex. F at KN000030; Def. Ex. W at UGS000075.

    B.    *Procedural History*

Knutson commenced this action on September 2, 2003, based on his claims for

6

unpaid commissions constituting breach of contract, unjust enrichment, and violation of the Indiana Wage Statute against UGS, SDRC and EDS. On July 26, 2006 a Stipulation of Dismissal with Prejudice relating to all claims against Defendant EDS was filed by all parties, which the Court approved on August 2, 2006. On September 3, 2006, Defendants UGS and SDRC filed this Motion for Summary Judgment against Plaintiff Knutson, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

### *Legal Analysis*

I.      *Summary Judgment Standard*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a

foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

*II.     Statutes of Limitations*

The parties disagree as to which of two separate statutes of limitations periods is applicable to Knutson's claims for commissions constituting breach of contract, unjust enrichment, and violation of the Indiana Wage Statute. Defendants assert that a two-year limitations period is appropriate while Knutson argues for a ten-year limitations period.

Specifically, Defendants argue that the breach of contract and unjust enrichment claims are subject to Indiana's two-year statute of limitations, Ind. Code § 34-11-2-1, for "employment related actions." Def. Mem. in Support at 21-22. Ind. Code § 34-11-2-1 provides "an action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages or salary) must be brought within two years of the date of the act or omission complained of." Defendants maintain that the statute's exception for "actions based upon written contract" does not apply to this action because Knutson did not have a written employment contract. Id. Defendants further assert that Knutson's incentive plans, while written, fall under the two-year statute of limitations for employment related actions, since the plans

9

are considered "privileges" and relate directly to his employment, but are not themselves employment agreements as defined by Indiana law. Def. Mem. in Support at 22; see Kemper v. Warren Petroleum Corp., Inc., 451 N.E.2d 1115, 1117 (Ind. Ct. App. 1983). Under the two-year statute of limitations, Knutson's purported claims from the 2001 sale of Metaphase/Teamcenter Enterprise software to General Motors and the maintenance portion of a 2001 Delphi transactions would be barred.

Knutson contends that all of his claims are timely because the ten-year statute of limitations, Ind. Code § 34-1-2-2(6), which applies to "contracts in writing," controls here, given that the commission plan between Knutson and his employer at the time, either SDRC or UGS, was a written contract.[3] Though overlooked in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Ind. Code § 34-1-2-2(6) was repealed and replaced by Ind. Code § 34-11-2-11, which in the same words as the repealed statute states:

> "[A]n action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues. However, an action upon contracts in writing other than those for payment of money entered into before September 1, 1982, not

---

[3] See Spearman v. General Motors Corp., 880 F. Supp 617 (S.D. Ind. 1994); see also Plaintiff Brief in Opp. at 9. In particular, Knutson tries to draw a comparison with the holding in Spearman. The Court in Spearman held that the ten-year statute of limitations of Ind. Code § 34-1-2-2(6) was more appropriate in the ERISA pension claim than the two-year statute of limitations of Ind. Code § 34-1-2-1.5. However, Spearman was later abrogated by this court in Ahnert v. Delco Electronics Corp., 982 F. Supp 1320 (S.D. Ind. 1997) (holding that Indiana's two-year limitations period, instead of the ten-year limitations period governed retaliatory discharge claims under ERISA antidiscrimination provision).

> including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, must be commenced within twenty (20) years after the cause of action accrues."

Although Knutson has failed to identify the specific written contract to which he is referring, after reviewing the exhibits we conclude that Knutson is broadly referencing all of the written incentive plans from 2001 to 2004.[4] We will, nonetheless, focus our analysis on the 2001 Individual Compensation Plan as it contained the amount of commissions to which Knutson was entitled during the time period that he alleges the violations occurred.

"Where the existence of an employment relationship is an essential element of a cause, the applicable statute of limitations is determined by whether the contract of employment was oral or written." See Kemper v. Warren Petroleum Corp., Inc., 451 N.E.2d 1115, 1117 (Ind. App. 1983).[5] Under Indiana law, a valid and enforceable employment contract must contain the four following elements: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee is to receive. Firestone v. Standard Management Corp., 2005 WL 1606955, at *5 (S.D. Ind. 2005). While Knutson's 2001 Individual Compensation Plan does constitute a commission contract, this document does

---

[4] See, Def. Ex. G for 2001 Compensation Program; Def. Ex. H for 2002 Incentive Plan; Def. Ex. K for Jan.1-June 30, 2003 Incentive Plan; Def Ex. L for July 1-Dec. 31, 2003 Incentive Plan; Def. Ex. M for 2004 Compensation Program.

[5] While Ind. Code § 34-1-2-1.5 is referenced in Kemper, the statute's "current version (Ind. Code § 34-11-2-1) is identical in all material respects." Arena v. ABB Power T & D Co., Inc., 2003 WL 21766560, at *5 (S.D. Ind. 2003).

not constitute a written employment contract as defined because it does not explicitly contain a period of employment.  See Butts v. OCE-USA, Inc., 9 F. Supp. 2d 1007, 1010-1011 (S.D. Ind. 1998).  We therefore conclude that, rather that a written employment contract, Knutson had an oral contract of employment.

The Plaintiff in Kemper argued that the contract at issue there was a written pension plan; here, Knutson argues that the contract at issue is the written 2001 Individual Compensation Plan.  Pl's Brief in Opp. at 9.  Applying the same analysis as the court in Kemper, we disagree with Knutson's argument that these written agreements are properly included under Ind. Code § 34-11-2-1.  See Kemper v. Warren Petroleum Corp., Inc., 451 N.E.2d 1115,1117 (Ind. App. 1983).  Ind. Code § 34-11-2-1 "is broad in its effect...[and] its application does not depend upon the specific nature of the dispute, *e.g.,* discharge, wages, retirement, etc.; rather its application depends upon whether the specific dispute arose out of an employment relationship." Id.  As with the pension plan in Kemper, the commission plan clearly "is a privilege of [Knutson's] employment and concerns his [wages]." Id. (internal quotations omitted).  Indeed, it cannot reasonably be viewed as pertaining to anything other than Knutson's employment.  Even though the 2001 Individual Compensation Plan was a written document, that "does not negate the fact the privilege arose out of the [the employee's] oral employment contract with Company." Id.  Having concluded that the 2001 Compensation Plan arises out of an employment relationship, we hold that the two-year statute of limitations set forth in Ind. Code § 34-11-2-1 necessarily controls Knutson's breach of contract claims.  As for Knutson's unjust

enrichment claims based on the same three transactions, these too are subject to a two-year statute of limitations for actions arising from an oral employment agreement, Ind. Code § 34-11-2-1.  See Peake v. Int'l Harvester Co., 489 N.E.2d 102, 105-106 (Ind. Ct. App. 1986).

In addition to his breach of contract and unjust enrichment claims, Knutson also makes claims pursuant to the Indiana Wage Statute, Ind. Code § 22-2-5-2.  The Indiana Wage Statute, Ind. Code § 22-2-5-2, provides:

> "Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys."

Knutson asserts that the statute of limitations for the Indiana Wage Statute is the same as the statute of limitations for a contract claim, without specifying the exact length of time.  Pl's Brief in Opp. at 9.  Defendants argue to the contrary, that, when applying the Indiana Wage Statute, a two-year statute of limitations is appropriate.  Def. Mem. in Support at 23.  We are persuaded that Defendants have advanced the correct interpretation here, as "Ind. Code § 22-2-5-2 [the Indiana Wage Statute] is an action claiming a forfeiture of a penalty provided by statute, claims brought under Ind. Code § 22-2-5-2 must be

commenced within two (2) years after the cause of action accrues, pursuant to Ind. Code § 34-11-2-4." Tipton County v. Ind., 731 N.E.2d 12, 21-22 (Ind. Ct. App. 2000).

Under Ind. Code § 34-11-2-1, "an action relating to the terms, conditions, and privileges of employment...must be brought within two years of the date of the act or omission complained of."  Knutson filed this action on September 2, 2005.  Accordingly, all of Knutson's breach of contract and unjust enrichment claims based on events or failures prior to September 2, 2003, are time barred by the two-year statute of limitations of Ind. Code § 34-11-2-1.  In addition, Knutson's claim for unpaid commissions pursuant to the Indiana Wage Statute which occurred prior to September 2, 2003, are also time barred, due to the two-year statute of limitations of Ind. Code § 34-11-2-4.  Thus, the only breach of contract, unjust enrichment and the Indiana Wage Statute claims remaining relate to the third transaction, that is, the sale of PLM CAE Software during the latter half of 2003, which are not barred by the controlling statutes of limitations.

### III. *Material Term Is Ambiguous*

Knutson's remaining claims for unpaid commissions constituting breach of contract, unjust enrichment, and violation of the Indiana Wage Statute which are not barred by the controlling statutes of limitations are based upon the NX Nastran and CAE Software sales transactions occurring in the latter half of 2003.  Knutson asserts that, based on the terms of the 2003 PLM Solutions Incentive Plan, he was entitled to

commissions totaling $53,827 from the sale of NX Nastran Software and related PLM CAE Software between July 1, 2003 and December 31, 2003, but was paid only $11,426. Def. Ex. F from Docket No. 44.  The term in dispute from Knutson's 2003 PLM Solutions Incentive Plan provides: "Software Measurement to include 50% of all NX Nastran Software and related PLM CAE Software sales into the Central and Eastern Americas Sales Regions."  Def. Ex. L from Docket No. 44.

      The disagreement between the parties revolves around the meaning of the word "related" in the 2003 PLM Solutions Incentive Plan.  Both sides argue that their respective interpretation of the word "related" is the only reasonable definition of the term.  Knutson maintains that the term "related" was intended to give specific attention to the new NX Nastran Software and make clear that NX Nastran was an included CAE Software product.  Depo. Knutson at 108.  Knutson, therefore, argues that the 2003 PLM Solutions Incentive Plan entitles him to a commission on all PLM CAE sales during the latter half of 2003.

      Defendants rejoin that the stand-alone sales of PLM CAE software, which Knutson claims should be included as a part of his commission, are not *related* directly to the sale of NX Nastran Software.  Def. Memo. in Support at 20.  Defendants further contend that Knutson's claim that "NX Nastran Software is useless without CAE Software" clarifies the meaning of "related" and justifies Knutson receiving a commission only when the two software systems were sold as a necessary package.  Def. Reply at 9; Knutson Response at 11.  In fact, Defendants maintain that Knutson was credited with $21,262.50 in

15

commissions during the July 1, 2003 to December 31, 2003, time period when the incentive plan was in effect.  Def. Reply at 19.

"A term is ambiguous if it is subject to reasonable alternative interpretations." Hickey v. A.E. Stanley Mfg., 995 F.2d 1385, 1389 (7th Cir. 1993) (quoting Taylor v. Continental Group, 933 F.2d 1227, 1232 (3d Cir. 1991).  Because as we have seen from the parties' contentions the word "related" is subject to at least two reasonable interpretations under Indiana law, we find that the term is in fact ambiguous. See Chicago Southshore & South Bend R.R. v. Itel Rail Corp., 658 N.E.2d 624, 633 (Ind. App. 1995).

Thus, we turn to the issue of whether the ambiguity is patent or latent.  A latent ambiguity "arises not upon the face of the instrument by virtue of the words used but emerges in attempting to apply those words in the manner directed in the instrument." Ohio Casulty Group of Insurance Companies v. Gray, 746 F.2d 381, 383 (7th Cir. 1984).  A patent ambiguity is one "apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused one."  Oxford Financial Group, Ltd. v. Evans, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003).  Indiana law recognizes that "extrinsic evidence is not admissible to explain or remove a patent ambiguity."  Id.  As such, resolution of a patent ambiguity necessarily involves a question of law.  Id.

We are of the opinion, after careful consideration, that the ambiguity in the 2003 PLM Solutions Incentive Plan is a patent one which arises from the inherent uncertainty of the word "related" in that it conveys a confused rather than a definite and settled

meaning. The reasonable meaning of "related" is to be determined as a matter of law without requiring the introduction of extrinsic evidence to rebut the reasonable interpretation that can be gleaned from the four corners of the incentive contract. See Ohio Casulty Group of Insurance Companies v. Gray, 746 F.2d 381, 383 (7th Cir. 1984). Our examination of the 2003 PLM Solutions Incentive Plan discloses that the most reasonable meaning of "related," based on the four corners of the document, is a sale that is directly connected to the original sale. It is clear from the wording of the commissions contract that UGS was placing limits on which PLM CAE Software sales Knutson was to get credit for in calculating his commission by requiring that PLM CAE Software sales be directly connected to the sale of the NX Nastran Software. If, as Knutson asserts, UGS used the word "related"in the commissions contract to emphasize that the commissions based upon the sale of PLM CAE software would now include the new NX Nastran Software, UGS would have worded the contract to more clearly indicate its intention. As written, the incentive agreement does not express that intention.

Accordingly, we hold that Knutson is not entitled to commissions on all sales of PLM CAE Software between July 1, 2003 and December 31, 2003, and we GRANT Defendants' Motion for Summary Judgment on Knutson's claims for unpaid commissions constituting breach of contract, unjust enrichment, and violation of the Indiana Wage Statute relating to these transactions.

## *Conclusion*

For the reasons detailed above, we hold that the two-year statute of limitations provided for in Ind. Code § 34-11-2-1 applies to Knutson's breach of contract and unjust enrichment claims and the two-year statute of limitations provided for in Ind. Code § 34-11-2-4 controls Knutson's Indiana Wage Statute claims.  Therefore, Knutson's claims based on a purported 2001 sale of Metaphase/Teamcenter Enterprise software to General Motors and the maintenance portion of a 2001 Delphi order are time barred.  In addition, we hold that Knutson is not entitled to commissions on all sales of PLM CAE Software between July 1, 2003 and December 31, 2003 under the 2003 PLM Solutions Incentive Plan.  Therefore, we GRANT Defendants' Motion for Summary Judgment in its entirety and final judgment shall be entered accordingly.  IT IS SO ORDERED.

Date:  07/19/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Spencer Patrick Goodson
BARNES & THORNBURG LLP
sgoodson@btlaw.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG

dwight.lueck@btlaw.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com